STACEY DREIBELBIS,             :
             Plaintiff,    :
                   :
        v.           :        No. 5:19-cv-4946
                   :
COUNTY OF BERKS,          :
             Defendant.   :

## O P I N I O N
### Defendant's Motion to Dismiss for Failure to State a Claim—DENIED

**Joseph F. Leeson, Jr.**                               **February 7, 2020**
**United States District Judge**

## I.    INTRODUCTION

In this employment discrimination action, Plaintiff Stacey Dreibelbis sues her former employer, the County of Berks, Pennsylvania ("the County"), for alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. § 951 *et seq*. ("PHRA"), and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"). Dreibelbis alleges that on June 13, 2018, she informed the County that, due to a disability, she would not be coming to work that day and would need to request FMLA leave. The County denied her request for leave, and on June 21, 2018, terminated her employment. Dreibelbis claims the County terminated her employment because of her disability and her request for FMLA leave.

Before the Court is the County's motion to dismiss the Complaint for failure to state a claim. For the reasons set forth below, the County's motion is denied.

## II.    BACKGROUND

### A.    Facts Alleged in the Complaint[1]

Dreibelbis was employed by the County for over twenty-five years.  Plaintiff's Complaint ("Compl.") [ECF No. 1] ¶ 5.  During the last two years of her employment, Dreibelbis suffered from anxiety, depression, chronic sinusitis, and bronchitis, which caused her substantial pain and significantly limited her major life activities.  *Id.* ¶ 6.  The Complaint alleges that, as such, she suffered from a disability, and the County perceived her as suffering from a disability.  *Id.* According to the Complaint, notwithstanding her disability, Dreibelbis was able to, and did, competently and diligently perform her job duties.  *Id.* ¶ 7.

Dreibelbis occasionally requested time off under the FMLA due to her disability.  Compl. ¶ 8.  In response to one of these requests, the County approved Dreibelbis for intermittent Family Medical Leave of Absence on May 2, 2018, granting her "[a]n absence of up to three (3) days per episode, one (1) time every four (4) weeks for occurrences of [her] medical condition from April 17, 2018 and expiring on April 16, 2019."[2]  *Id.*  Notwithstanding its approval of her FMLA leave request, the Complaint alleges that the County "often treated [Dreibelbis'] requests for intermittent FMLA leave with antagonism," stating that Dreibelbis' supervisor "once

---

[1]    These facts are taken from the Complaint and accepted as true, with all reasonable inferences drawn in Dreibelbis' favor.  *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018).  Except where necessary for context, the Court's recitation of the allegations of the Complaint does not include conclusory assertions or legal contentions, neither of which need be considered by the Court in determining the viability of Dreibelbis' claims.  *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).
[2]    Attached as Exhibit B to the Complaint is the County's formal approval of Dreibelbis' request for intermittent Family Medical Leave, dated May 2, 2018.

begrudgingly notated on one of [her] FMLA requests that he was granting the FMLA leave request 'w/ no choice!'"[3]  *Id.* ¶ 9.

On June 13, 2018, Dreibelbis was unable to work because of her depression and anxiety. Compl. ¶ 11.[4]  As a result, and, according to the Complaint, pursuant to the County's policy, Dreibelbis informed the County prior to the start of her shift that day that she would not be working and would need to request FMLA leave.  *Id.*  Dreibelbis returned to work on June 14, 2018, and filled out a request for FMLA leave, which she again claims was "pursuant to [the County's] policy."  *Id.* ¶ 12.  The County denied Dreibelbis' request for FMLA leave, and on June 21, 2018, terminated her employment.  *Id.*

The Complaint avers that Dreibelbis' request for leave to account for her absence on June 13, 2018 was a request for a reasonable accommodation for her disability, which request was denied.  Compl. ¶ 13.  The Complaint states that, in addition, the County failed to communicate with Dreibelbis in good faith to determine whether there were any other reasonable accommodations it could provide her, as, Dreibelbis contends, was its obligation under the ADA.[5]  *Id.*

Based on the above allegations, the Complaint asserts claims for discrimination and failure to accommodate under the ADA[6] and PHRA, as well as claims for retaliation and interference under the FMLA.

---

[3]       A copy of this leave request is attached as Exhibit C to the Complaint.
[4]       The Complaint does not include a paragraph number "10," instead skipping from paragraph number 9 to paragraph number 11.
[5]       Anticipating the County's argument that Dreibelbis did not have any more intermittent FMLA leave for the month of June 2018, the Complaint states that the County nonetheless interfered with Dreibelbis' request to take additional FMLA leave, as, it claims, was her right under the FMLA.  *Id.*
[6]       Dreibelbis' motion papers contend that she also pleads a claim for "retaliatory termination under the ADA," however, there is no reference to "retaliation" in either Count I or

**B.** **Procedural Background**

Dreibelbis filed the Complaint in this action on October 23, 2019. *See* ECF No. 1. The County moved to dismiss the Complaint on November 22, 2019, *see* ECF No. 6, and, pursuant to stipulation, Dreibelbis filed her response in opposition to the motion to dismiss on December 20, 2019, *see* ECF No. 9. The County did not file a reply memorandum in further support of its motion to dismiss.

## III. STANDARD OF REVIEW

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the appropriate pleading standard in federal civil actions and set forth a two-step approach to be used when deciding motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *Thourot v. Monroe Career & Tech. Inst.*, No. CV 3:14-1779, 2016 WL 6082238, at *2 (M.D. Pa. Oct. 17, 2016) (explaining that "[a] formulaic recitation of the elements of a cause of action" alone will not survive a motion to dismiss). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

_____

Count II of the Complaint. This inconsistency is addressed in a subsequent section of this Opinion.

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This standard, commonly referred as the "plausibility standard," "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556-57). It is only where the "[f]actual allegations . . . raise a right to relief above the speculative level" that the plaintiff has stated a plausible claim.[7] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

The Court's task then, post-*Iqbal*, in deciding a motion to dismiss for failure to state a claim, is to determine whether based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the complaint states a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 679; *Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2 (M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set out sufficient factual matter to show that its claims are facially plausible.").

Lastly, the Court notes that in adjudicating a Rule 12(b)(6) motion, the scope of what may be considered is necessarily constrained: a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[8] *United States v. Gertsman*, No. 15-8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)).

---

[7]     As the Supreme Court counseled, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679

[8]     Additionally, a court adjudicating a Rule 12(b)(6) motion may take judicial notice of certain undisputed facts. *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

IV.     ANALYSIS

A.     Whether a prima facie claim of discrimination is necessary

Before addressing the substance of her claims, the Court must address a threshold issue that is highly relevant to Dreibelbis' claims of discrimination:  whether she needs to allege a prima facie claim of discrimination in order to survive the County's motion to dismiss.

Prior to deciding either *Iqbal* or *Twombly*, the Supreme Court in *Swierkiewicz v. Sorema, N.A.* clarified that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of employment discrimination.[9]  534 U.S. 506, 508, 511 (2002).  The Court's reasoning rested on the logic that if a plaintiff alleging employment discrimination "is able to produce *direct* evidence of discrimination, he may prevail without proving all the elements of a prima facie case."[10]  *Id.* at 511 (emphasis added).  That the claims of a plaintiff who lacked direct evidence of discrimination at the time of pleading would not survive a motion to dismiss despite the fact that she might come across such evidence during discovery and be able to ultimately prevail on her claims struck the Court as incorrect:  as the

_____

[9]      The Court in *Swierkiewicz* was addressing claims of employment discrimination under Title VII of the Civil Rights Act ("Title VII") and the Age Discrimination in Employment Act ("ADEA").

[10]      In such a situation, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies at the burden of proof stage in cases of employment discrimination based on circumstantial—rather than direct—evidence of discrimination, is inapplicable.  *See Swierkiewicz*, 534 U.S. at 511 ("[I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case.").

      It is important to note that at the motion to dismiss stage, the Court does not engage in burden-shifting; rather it accepts all well-pleaded factual allegations as true.  Therefore, the framework set forth in *McDonnell Douglas* and its shifting burdens of proof are inapplicable to the instant analysis.  *See, e.g., Bartlett v. Kutztown Univ.*, No. 13–4331, 2015 WL 766000, at *8 n.11 (E.D. Pa. Feb. 23, 2015) (noting that a plaintiff responding to a Rule 12(b)(6) motion "need not establish by a preponderance of evidence that Defendants' purported reason for terminating Plaintiffs' employment . . . was a pretext for discriminatory conduct" because "the *McDonnell Douglas* burden-shifting standard does not apply" at the motion to dismiss stage).

Court observed, "[i]t thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id*. at 511-12.

With *Swierkiewicz* in mind, the questions the Court must resolve in the context of Dreibelbis' Complaint are twofold: (1) whether *Swierkiewicz* and its reasoning remains good law in a post-*Iqbal* and *Twombly* world; and (2) whether *Swierkiewicz* and its reasoning applies with equal force to claims of employment discrimination brought under the ADA (as brought by Dreibelbis) as employment discrimination claims brought pursuant to Title VII (as brought by the plaintiff in *Swierkiewicz*).[11]

The Court answers the first question confidently in the affirmative. Notwithstanding the doctrinal shift that took place in the movement from the "no-set-of-facts" pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957) to the now-familiar "plausibility" standard articulated in *Iqbal* and *Twombly*, *Swierkiewicz* remains good law. Indeed, "the Supreme Court itself clarified in *Twombly* that '*Swierkiewicz* did not change the law of pleading, but simply re-emphasized . . . that the . . . use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements.'" *Kelly v. HD Supply*

---

[11] Related to the previous footnote as well as to these two inquiries is an issue that even a casual reader of the cases cited in this portion of the Opinion will notice: many of these decisions imprecisely—and, in the Court's view, incorrectly—utilize the terms "prove," "establish," "allege," and "plead" in an interchangeable fashion when discussing the sufficiency of pleadings. Contrary to this practice, the Court will endeavor to limit itself to use of the terms "plead" and "allege," and avoid use of the terms "prove" or "establish" when discussing this issue except for when it cannot be avoided due to quotations. This is appropriate because all plaintiffs, including Dreibelbis, need not *prove* or *establish* anything to survive a motion to dismiss; the Court's inquiry is only as to the Complaint's well-pleaded factual allegations, the truth of which is assumed. As a result, the Court is only dealing in "allegations" and "pleadings."

*Holdings, Inc.*, No. CIV. 14-372, 2014 WL 5512251, at *3 (D.N.J. Oct. 31, 2014) (quoting *Twombly*, 550 U.S. at 569).

This has been illustrated more recently. When the district court for the Western District of Pennsylvania dismissed a complaint pleading gender-based employment discrimination under Title VII by rejecting the logic of *Swierkiewicz* in light of *Iqbal* and *Twombly*, *see Connelly v. Lane Const. Corp.*, No. 2:13-CV-1402, 2014 WL 3735634, at *7 (W.D. Pa. July 28, 2014), the Third Circuit vacated and remanded the matter at least in part on the basis of *Swierkiewicz*'s continued applicability, *see Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). In particular, the Court of Appeals criticized the district court's analysis in that it "proceeded with a point-by-point consideration of the elements of a *prima facie* case required by a pretext theory" of discrimination. *Id.* The Court found it "worth reiterating that, at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Id.* (citing *Swierkiewicz*, 534 U.S. at 510). Rather, a complaint need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof" of unlawful discrimination." *Connelly*, 809 F.3d at 789.

District courts in this Circuit continue to adhere to this approach,[12] and this Court is satisfied that post-*Iqbal* and *Twombly*, a plaintiff need not allege a prima facie claim of Title VII employment discrimination in order to survive a motion to dismiss.

---

[12]   *See, e.g.*, *Lee v. Univ. of Pennsylvania, Sch. of Dental Med.*, No. CV 19-835, 2019 WL 4060843, at *5 (E.D. Pa. Aug. 27, 2019) ("Although [*Swierkiewicz*] pre-dated *Twombly* and *Iqbal*, the Third Circuit has continued to follow its guidance in Title VII cases thereafter. Accordingly, a 'plausible' Title VII claim may be alleged without establishing a full prima facie case of discrimination."); *Sztroin v. PennWest Indus. Truck, LLC*, No. CV 17-665, 2017 WL 4355575, at *4 (W.D. Pa. Oct. 2, 2017) (explaining that a Title VII plaintiff need not "establish a prima facie case" in order to survive a motion to dismiss; rather, she "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [she] was a member of a protected class and that she suffered an adverse employment action"); *Watson v.*

With respect to the second question—whether the reasoning of *Swierkiewicz* applies to claims of disability discrimination under the ADA—the answer is also in the affirmative, however the basis for the answer is slightly more muddled. The case law the Court has come across addressing the sufficiency of pleadings sometimes does, and sometimes does not, make meaningful distinctions between employment discrimination claims based on Title VII protected classes and those premised on disability. A brief survey of some of these decisions in which courts have addressed both Title VII and ADA-based employment discrimination illustrates this point.

In *Lee v. Univ. of Pennsylvania, Sch. of Dental Med.*, No. CV 19-835, 2019 WL 4060843 (E.D. Pa. Aug. 27, 2019), the plaintiff asserted claims of disability discrimination under the ADA as well as national-origin-based discrimination under Title VII. In addressing his Title VII claim, the district court cited *Swierkiewicz*, and explained that "[i]n Title VII cases, both the Supreme Court and the Third Circuit have held that a plaintiff does not need to prove each element of a prima facie case of discrimination to state a plausible claim for relief." *Id.* at *5. The court found the plaintiff had adequately stated a Title VII discrimination claim. *See id.* In seeming contrast, the court couched its analysis of the plaintiff's ADA-based claims in terms of a prima facie case, making no reference to *Swierkiewicz*, and concluded that the plaintiff had failed to adequately identify a medical condition constituting a "disability." *See id.* at *4 ("To

_____

*Department of Services for Children, Youths and Their Families Delaware,* 2013 WL 1222853, *4 (D. Del. Mar. 26, 2013) (reviewing the sufficiency of a Title VII race discrimination claim and concluding that "a complaint in an employment discrimination lawsuit need not contain specific facts establishing a *prima facie* case of discrimination under *McDonnell Douglas*") (collecting cases); *Pietek v. Don Rosen Imports,* 2013 WL 968294, *2 (E.D. Pa., March 13, 2013) (explaining, with respect to *Swierkiewicz,* that "[a]lthough th[e] decision pre-dated *Twombly* and *Iqbal,* the Third Circuit has continued to follow its guidance in Title VII cases decided thereafter").

adequately plead the first element of the prima facie case, Plaintiff must identify the medical condition or illness from which he claims to suffer . . . .").[13] *Lee* is therefore a case in which the two types of employment discrimination claims—ADA-based and Title VII-based—appear to receive different treatment.

In *Henley v. Brandywine Hosp., LLC*, No. CV 18-4520, 2019 WL 3326041 (E.D. Pa. July 24, 2019), where the plaintiff brought ADA-based and Title VII-based discrimination claims, the district court stated as follows with regard to the Title VII discrimination claims:

> At the motion to dismiss stage, a plaintiff does not need to prove the elements of a prima facie case "because 'it may be difficult' for a plaintiff to prove discrimination '[b]efore discovery has unearthed relevant facts and evidence.'" *Castleberry v. STI Group*, 863 F.3d 259, 266 (3d Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Rather, as relevant here, "a claim of employment discrimination necessarily survives . . . so long as the requisite *prima facie* elements have been established," including adverse employment action. *Castleberry*, 863 F.3d 266; *see also Jenkins*, 2017 WL 1361689, at *3 ("The plaintiff must plead sufficient facts to allow the factfinder to infer that discrimination was the reason for the adverse employment action.").

*Henley*, 2019 WL 3326041, at *9. The court subsequently explained that "[d]isability discrimination claims under the ADA are subject to the same burden-shifting framework as race discrimination claims under § 1981, Title VII, and the PHRA." *Id.* at *12. The court's analysis of the ADA-based discrimination claims, however, does not mention the absence of a prima facie requirement, and, to the contrary, proceeds with an analysis of the prima facie elements of an ADA-based discrimination claim. *Id.*

---

[13] The district court in *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502 (E.D. Pa. 2012), similarly stated as follows: "[i]n order to state a claim for discrimination under the ADA, a plaintiff must allege that: 1) [s/he] is 'disabled' within the meaning of the ADA; 2) [s/he] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) [s/he] has suffered an adverse employment decision as a result of discrimination." *Id.* at 512 (quotation marks omitted). *Koller* would therefore seem to support the proposition that a plaintiff must plead a prima facie ADA-based employment discrimination claim to survive a motion to dismiss.

In *Swanger-Metcalfe v. Bowhead Integrated Support Servs., LLC*, No. 1:17-CV-2000, 2019 WL 1493342 (M.D. Pa. Mar. 31, 2019), the district court stated that "[i]n the context of an employment discrimination claim, a plaintiff's complaint must meet only 'the simple requirements of Rule 8(a).'" *Id*. at *8 (quoting *Swierkiewicz*, 534 U.S. at 513). Despite this pronouncement, the Court proceeded to analyze the plaintiff's Title VII claim based on the prima facie elements of a Title VII claim, concluding that the allegations failed to state the fourth element of a Title VII employment discrimination claim—circumstances giving rise to an inference of discrimination.[14] *See Swanger-Metcalfe*, 2019 WL 149342, at *7-*8. As to the plaintiff's disability-discrimination claim under the ADA, the district court made no reference as to whether *Swierkiewicz* was applicable, and concluded that the complaint's allegations were not "sufficient to support a reasonable inference that she is disabled under the ADA." *Id*. at *11.

Finally, *Kelly v. HD Supply Holdings, Inc.*, No. CIV. 14-372, 2014 WL 5512251 (D.N.J. Oct. 31, 2014)—a case involving only a claim of disability discrimination—is also instructive. The district court in *Kelly* observed that according to the Supreme Court, "in employment discrimination cases, a plaintiff is not required to establish a prima facie case at the pleadings stage." *Id*. at *3 (citing *Swierkiewicz*, 534 U.S. at 510). Thus, the plaintiff "was not required to plead a prima facie case in order to survive a motion to dismiss." *Kelly*, 2014 WL 5512251, at *3. The court further elaborated, "Plaintiff need not plead all the elements of a prima facie case of discrimination because those elements may not be required at trial. Instead, plaintiff's claim

---

[14]     Similarly, in *Vanderveer v. FedEx Ground Package Sys., Inc.*, No. CV 16-1979, 2017 WL 2224978 (E.D. Pa. May 19, 2017), the district court purports to apply the guidance of *Swierkiewicz* as to both Title VII discrimination and ADA-based discrimination claims, however, dismisses the ADA-based discrimination claim for failure to satisfy the causation element of a prima facie claim. *See id*. at *2, *5-*6.

must be facially plausible and give fair notice to the defendants of the basis of the claim." *Id.* at *4.

As several of the above decisions illustrate, the analysis of cases addressing the sufficiency of pleadings in the context of employment discrimination claims under both Title VII and the ADA can, at times, be less than clear. Notwithstanding this lack of clarity, the Court is satisfied that the reasoning and pronouncements of *Swierkiewicz* apply in full force to employment discrimination claims brought under the ADA. *See Kelly*, 2014 WL 5512251, at *3. It is well recognized that the burden-shifting framework of *McDonnell Douglas* applies to ADA claims as well as to Title VII claims. *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 642 (W.D. Pa. 2018); *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 434 (E.D. Pa. 2015). Although that framework does not come into play at the motion to dismiss stage, application of the logic of *Swierkiewicz*—that the potential existence of yet-unknown *direct* evidence of discrimination obviates the need to plead all prima facie elements of a discrimination claim[15]— makes sense in light of the similar treatment each type of claim receives when burden shifting does take place. Similarly, and more directly, in the context of employment discrimination, "the ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (quoting *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir. 1995)). Although—and this bears repeating—

---

[15] The concept of "direct evidence" of discrimination is as applicable to disability discrimination as it is to discrimination under Title VII. *See, e.g.*, *Keyes v. Catholic Charities of the Archdiocese of Philadelphia*, 415 F. App'x 405, 408 (3d Cir. 2011).

the instant analysis is not concerned with "proof," that the same "methods and manners of proof" apply to employment discrimination claims under Title VII as well as the ADA leads the Court to conclude the same sufficiency-of-pleadings analysis that "informs" a court's inquiry under Title VII should similarly inform a court's inquiry in the context of a discrimination claim under the ADA.

To bring the above inquiry and its conclusions back to the instant Complaint: in order for her claims of disability discrimination to survive the County's motion to dismiss, Dreibelbis need not plead all of the prima facie elements of a discrimination claim "because those elements may not be required at trial." *Kelly*, 2014 WL 5512251, at *4; *see Swierkiewicz*, 534 U.S. at 511-12. Instead, as with Title VII discrimination claims at the pleadings stage, her ADA "claim must be facially plausible and give fair notice to the defendants of the basis of the claim." *Id.*; *Watson v. Department of Services for Children, Youths and Their Families Delaware,* 2013 WL 1222853, * 4 (D. Del. Mar. 26, 2013) ("[A] complaint in an employment discrimination lawsuit need not contain specific facts establishing a *prima facie* case of discrimination under *McDonnell Douglas*.") (collecting cases). For a claim to be "facially plausible," it must be the case that the allegations state "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008)); *Fabian v. St. Mary's Med. Ctr.*, No. CV 16-4741, 2018 WL 4145037, at *3 (E.D. Pa. Aug. 30, 2018) (explaining that the prima facie elements are used as "analytical guideline[s] in assessing the plausibility of whether a plaintiff's claims comport with the *Twombly/Iqbal* pleading standards"); *Sztroin v. PennWest Indus. Truck, LLC*, No. CV 17-665, 2017 WL 4355575, at *5 (W.D. Pa. Oct. 2, 2017) ("Accepting the facts as pled as true, Plaintiff's allegations raise a

reasonable expectation that discovery will reveal evidence that Plaintiff's protected status played either a motivating or determining factor in PennWest's decision to terminate her. Accordingly, Plaintiff has sufficiently pled a disparate treatment claim to defeat a motion to dismiss.").

### B. Discrimination under the ADA and PHRA

The Court begins its analysis of Dreibelbis' claims with those brought under the ADA and PHRA. These statutes are "interpreted consistently" with one another, and each "ha[s] the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (collecting cases). As such, Dreibelbis' claims arising under these statutory frameworks are addressed together. *See Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 n.5 (3d Cir. 2011) ("The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds.").

Counts I and II of the Complaint plead claims of disability discrimination under the ADA and PHRA, respectively. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Although they do not require strict satisfaction through Dreibelbis' allegations, the elements of a prima facie claim of disability discrimination remain the Court's "analytical guideline[s] in assessing the plausibility" of her discrimination claims, *Fabian*, 2018 WL 4145037, at *3, and as such, the Court begins with them.

A prima facie claim of discrimination under the ADA requires a plaintiff to show she is "(1) disabled within the meaning of the ADA, (2) can perform essential functions of his job with

or without reasonable accommodation, and (3) suffered an adverse employment action as a result of" her disability." *Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017) (citing *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000) and *Gaul v. Lucent Technologies Inc.,* 134 F.3d 576 (3d Cir. 1998)). The Court is satisfied that Dreibelbis adequately alleges that she is disabled within the meaning of the ADA, that she was able to perform the essential functions of her job, and that she suffered an adverse employment action. As to her disability, the Complaint states that during the last two years of her employment, Dreibelbis suffered from anxiety, depression, chronic sinusitis, and bronchitis, that caused her substantial pain and significantly limited her major life activities, and as a result the County perceived Dreibelbis as suffering from a disability. Compl. ¶ 6. These allegations are sufficient to plead a disability.[16] *See Wainberg v. Dietz & Watson, Inc.*, No. CV 17-2457, 2017 WL 5885840, at *2 (E.D. Pa. Nov. 28, 2017).[17] Dreibelbis also claims—and the County does not dispute—that she was terminated. Compl. ¶12. It is well settled that "termination is an adverse employment action." *Bossi v. Bank of Am.*, No. 3:14-CV-02301, 2016 WL 4446444, at *3 (M.D. Pa. Aug. 19, 2016) (citing *Thompson v. Ass'n of Pa. State Coll. and Univ. Faculties*, No. 1-04-0317, 2005 WL 2030475, at *4 (M.D. Pa. 2005)). Dreibelbis further alleges that she was able to, and did, competently and diligently perform her job duties. Compl. ¶ 7.

The Court is thus left with the issue of causation: whether the adverse employment action Dreibelbis suffered was the result of her disability. The County contends that the

---

[16]    Nor does the County contend that she has failed to plead a disability.

[17]    "A plaintiff is 'disabled within the meaning of the ADA' if he satisfies the requirements of one of three statutory prongs: (1) he has 'a physical or mental impairment that substantially limits one or more major life activities of such individual;' (2) he has 'a record of such an impairment;' or (3) he has been 'regarded as having such an impairment.'" *Id.* (quoting 42 U.S.C. § 12102(1)).

"termination memorandum" issued in conjunction with Dreibelbis' termination on June 21, 2018, which is attached to the Complaint, "clearly" shows that she was terminated because "she failed to comply with the County's Time and Attendance Policy by accumulating an excessive number of unexcused absences." County's Memorandum in Support of its Motion ("County's Mem.") [ECF No. 6-1] at 8. The County further argues that "[e]ven assuming Plaintiff could establish a prima facie case, which she cannot, the County [ ] nonetheless had a legitimate, non-discriminatory reason for [her] termination," and Dreibelbis would be unable to satisfy her ultimate burden under the burden-shifting framework of *McDonnell Douglas*. *Id*. at 8-9.

As Dreibelbis points out, and as the Court has discussed at length, consideration of burden-shifting is inappropriate at the motion to dismiss stage.[18] To the contrary, the Court is satisfied that notwithstanding the "termination memorandum," Dreibelbis has met her minimal burden as to the issue of causation at this stage of the litigation. Specifically, the Complaint alleges that the County often treated her past requests for leave due to her disability with antagonism and expressed this antagonism with a notation "w/no choice!" on a form approving a request for FMLA leave.[19] Compl. ¶ 9; *id*., Ex. C. Moreover, Dreibelbis alleges she was terminated eight days after she requested and took—albeit without approval—leave owing to her disability. *See id*. ¶¶ 9-12. These allegations are, in the Court's view, sufficient to form a reasonable expectation that discovery may reveal further evidence to support Dreibelbis'

---

[18] This is of course not to assume that Dreibelbis' discrimination claims would survive a burden-shifting analysis at the summary judgment stage.

[19] Of note, this notation was made in August 2016. An argument could be made that because the existence of evidence potentially connecting her disability to her termination originated almost two years in advance of that termination, there is an increased likelihood that additional incriminating evidence might be found within that two-year period.

contention that the County's decision to terminate her employment was motivated by her disability.

## C. Failure to accommodate under the ADA and PHRA

Counts I and II of the Complaint also assert claims for the County's "failure to accommodate" Dreibelbis' disability under the ADA and PHRA. An employer violates the ADA when it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).[20] To plead a prima facie claim of failure to accommodate, a plaintiff must allege that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). "Reasonable accommodations" are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The applicable regulations further provide that

---

[20] While the Court does not address this claim in terms of "discrimination," failing to "mak[e] reasonable accommodations" is statutorily defined as discriminatory conduct. However, unlike other discrimination claims, "failure to accommodate claims 'do not require that an employer's action be motivated by a discriminatory animus directed at the disability and, therefore, the *McDonnell Douglas* test does not apply.'" *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 595 (E.D. Pa. 2017) (quoting *Sharbaugh v. W. Haven Manor, LP*, No. CV 14-1723, 2016 WL 6834613, at *7 (W.D. Pa. Nov. 21, 2016)).

> [t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).

The County argues that "calling out sick cannot reasonably be construed as a request for an accommodation," and, "[e]ven assuming that Plaintiff's request for intermittent FMLA leave constituted a request for a reasonable accommodation under the ADA in this case, the County [ ] approved Plaintiff's request for intermittent leave consistent with certification by her doctor." County's Mem. at 11. The County further contends that it was only after Dreibelbis "had exceeded the number of allowed days off as certified by her own doctor that [she] violated the County's absenteeism policies." *Id.* The County "was not required to excuse [her] unauthorized absence simply because she now asserts" that it was required by her disability and could have been a reasonable accommodation. *Id.* Dreibelbis in response argues that many courts have determined that a request to take leave can constitute a request for a reasonable accommodation. *See* Dreibelbis' Memorandum in Opposition ("Opp'n. Mem.") [ECF No. 9] at 5-7. She additionally contends that the County's argument that it had already accommodated her request for a reasonable accommodation should be rejected because the duty to provide reasonable accommodations is a continuing one. *See id.* at 7.

Dreibelbis has adequately alleged that she was disabled and that the County knew it, the first element of a failure to accommodate claim. The Court is also satisfied that the Complaint satisfies the fourth element—that Dreibelbis could have been reasonably accommodated—because for a significant period of time the County *was* accommodating her by providing her with FMLA leave. *See* Compl. ¶¶ 6, 8. The primary issue is therefore whether the Complaint

alleges that Dreibelbis requested a reasonable accommodation, and whether the County made a good faith effort to assist.

The Court must conclude that Dreibelbis has adequately pleaded these elements of her failure to accommodate claim, and it would therefore be premature to dismiss the claim at this time. First, there is a legal basis for Dreibelbis' contention that her request for FMLA leave to cover her absence on June 13, 2018, constituted a request for a reasonable accommodation. The Third Circuit has held that "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA."[21] *Capps*, 847 F.3d at 156-57. Moreover, "[a] finite period of unpaid medical leave may constitute a reasonable accommodation if the requested leave 'would enable the employee to perform his essential job functions in the near future.'" *Vought v. Twin Tier Hosp., L.L.C.*, No. 1:18-CV-1113, 2019 WL 2501470, at *5 (M.D. Pa. June 17, 2019) (quoting *Conoshenti v. Pub. Serv. Elec. & Gas Co*., 364 F.3d 135, 151 (3d Cir. 2004) and citing *Walton v. Mental Health Ass'n of Se. Pa*., 168 F.3d 661, 671 (3d Cir. 1999)). Therefore, Dreibelbis' allegations that (i) she requested FMLA leave, which also constituted a request for a reasonable accommodation, and (ii) the County failed to grant her

---

[21]     However, in *Capps*, the Court of Appeals determined that the record on summary judgment did not support concluding that a request for FMLA leave qualified as a request for a reasonable determination. It reasoned as follows:

> [E]ven assuming, arguendo, that Capps' requests for intermittent FMLA leave constituted requests for a reasonable accommodation under the ADA as well, [his employer] continued to approve Capps' requested leave, and indeed, Capps took the requested leave. Thus, [his employer] provided and Capps received the accommodation he asked for. There is clearly a lack of evidence to show that [the employer] did not make a good faith effort in accommodating Capps' request for intermittent leave.

*Id.* at 157.

request, in combination with the allegation that (iii) the County knew (or at least believed) Dreibelbis' disability could be reasonably accommodated because it had accommodated her before, and (iv) the County failed to engage in an interactive process, together provide a sufficient basis for her failure to accommodate claim.

Notwithstanding this conclusion, it is worth briefly noting that the Court recognizes the County's arguments—both factual and legal—may indeed have merit and prove decisive on a motion for summary judgment or at trial. For example, the County's motion papers reference Dreibelbis' doctor's "certification," as well as the allegation that she had exceeded the number of days allotted to her and had violated the County's absenteeism policies. *See* County's Mem. at 11. These, and potentially other factual contentions—for example, there might have been an attempt at an interactive process which has not been referenced in the pleadings—may sustain the County's ultimate argument that Dreibelbis cannot prove her failure to accommodate claim as a matter of law. However, these assertions are appropriately brought forward by way of a motion for summary judgment, or at trial, as part of a factual record that has been developed through discovery.[22]

---

[22]  The Court has come across several cases in which courts have determined that attempts to categorize leave requests as requests for reasonable accommodations post-hoc did not sustain claims for failure to accommodate. However, these decisions generally appear to be made on summary judgment records.

For example, in *Arana v. Temple Univ. Health Sys.*, a court in this District came to a conclusion similar to that of the Third Circuit in *Capps v. Mondelez Glob., LLC* on an employer's motion for summary judgment. *See* footnote 19, *supra*. The court found that "[t]he record demonstrates that Arana was approved for, and took, FMLA leave throughout her employment with Temple. Thus Arana's request for FMLA leave cannot be used to create a genuine dispute of material fact regarding whether Temple failed to provide reasonable accommodations or otherwise engage in the interactive process." *Arana*, No. CV 17-525, 2018 WL 2063600, at *6 (E.D. Pa. May 3, 2018), *aff'd*, 776 F. App'x 66 (3d Cir. 2019). *Arana* appears to be particularly factually analogous to this case: the record in *Arana* indicated that the plaintiff had on many occasions taken intermittent FMLA leave, and had "felt like it was an inconvenience" when she took it. *Id.* at *2. Additionally, on one occasion, when the plaintiff

## D. Retaliatory Termination under the ADA and PHRA

Dreibelbis contends in her motion papers that her Complaint asserts a claim for "retaliatory termination under the ADA/PHRA." Opp'n. Mem. at 13. She also recognizes that "Defendant does not address this claim in its motion to dismiss." *Id*. at 14. This is most likely because there is no reference to "retaliation" in either Count I or Count II—the portion of the Complaint where she purports to assert claims under the ADA and PHRA. The Court was similarly unaware that Dreibelbis was attempting to assert such a claim until it read her motion papers, which is problematic. As a general matter, the manner in which Dreibelbis has asserted her causes of action can be characterized as non-specific and imprecise: Counts I – III are titled "Alleging Violations of the ADA," "PHRA," and "FMLA," respectively, and fail to state which of several theories of liability Dreibelbis is attempting to assert under the referenced statutory framework. This approach is not conducive to the purpose of notice pleading, as the County does not know which theory of liability it must defend against. *See* FED. R. CIV. P. 8(a)(2). It similarly forces the Court to guess as to which theories Dreibelbis is attempting to put forward.

Notwithstanding her failure to plead with precision and the absence of a response to this claim from the County, the Court recognizes the "liberal" pleading standard embodied in Rule 8

---

attempted to call out under her FMLA leave, she was told "there's no coverage. You have to come in." *Id*. She did not identify any other instances in which she requested but was denied FMLA leave, and was subsequently terminated for absenteeism. *Id*. at *2-*4.

Additionally, in *Katz v. UPMC*, another district court found the record on summary judgment unable to support the plaintiff's failure to accommodate claim even assuming that she had requested accommodations, because it was clear that the plaintiff was terminated based on extensive past misconduct. 2:16-CV-1627, 2019 WL 3843041, at *8 (W.D. Pa. Aug. 15, 2019). Specifically, the court cited the Equal Employment Opportunity Commission's ("EEOC") Enforcement Guidelines, which made "clear that the requirement to provide reasonable accommodations under the ADAAA [sic] is 'always prospective,' and that 'an employer is not required to excuse past misconduct even if it is the result of the individual's disability.'" *Id*. (quoting *Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017)).

of the Federal Rules of Civil Procedure, a standard that is characteristic of the transition from the pre-notice pleading days of the period prior to adoption of the Federal Rules of Civil Procedure. *See Evancho v. Fisher*, 423 F.3d 347, 352 (3d Cir. 2005). Moreover, as discussed at length previously, this liberal standard is especially appropriate when confronting claims of employment discrimination. *See generally Swierkiewicz v. Sorema,* 534 U.S. 506 (2002). For these reasons, the Court will, in its discretion, construe the Complaint to assert a claim for "retaliatory termination" under the ADA and PHRA.

"[I]t is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003). A prima facie claim of retaliation under the ADA requires allegations that (1) a plaintiff be engaged in a "protected activity," (2) the plaintiff be subjected to an adverse employment action by the County, and (3) a causal connection between the protected activity and the adverse employment action exists.[23] *Monaco v. Limestone Veterinary Hosp.*, 152 F. Supp. 3d 253, 263 (D. Del. 2016). "Protected activity" under the ADA "includes retaliation against an employee for requesting an accommodation." *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015) (quoting *Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 188-89 (3d Cir. 2010)).

---

[23] Claims of retaliation under the ADA are analyzed under the same burden-shifting framework as other discrimination claims. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) ("If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action."). This includes Title VII retaliation claims. *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 447 (W.D. Pa. 2009). Accordingly, the Court applies *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002) and its reasoning to Dreibelbis' allegations with respect to this claim: Dreibelbis need not plead all the elements of her claim to survive the motion to dismiss.

The Court is satisfied that Dreibelbis' allegations are sufficient to state a claim for retaliation under the ADA. As discussed, "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA." *Capps*, 847 F.3d at 156-57. Construing the allegations in Dreibelbis' favor, the Court finds that for purposes of the County's motion to dismiss, her request for FMLA leave satisfies the "protected activity" element of her ADA retaliation claim. *See Barber*, 131 F. Supp. 3d at 329. Similarly, Dreibelbis was terminated, which, as discussed, constitutes an "adverse employment action." *See Bossi v. Bank of Am.*, No. 3:14-CV-02301, 2016 WL 4446444, at *3 (M.D. Pa. Aug. 19, 2016). Lastly, as to causation, the temporal proximity of the protected activity to the adverse employment action—eight days—is sufficient to plausibly suggest a causal relationship, or, at a minimum, to support a reasonable expectation that discovery may reveal further evidence to support Dreibelbis' contention that the County's decision to terminate her employment was motivated by her request for a reasonable accommodation. *See Taylor v. JFC Staffing Assocs.*, 690 F. Supp. 2d 357, 371 (M.D. Pa. 2009) (finding twelve days between the protected activity and the adverse employment action sufficient to support a Title VII retaliation claim); *compare LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *Gillyard v. Geithner*, 81 F. Supp. 3d 437, 445 (E.D. Pa. 2015) (finding three months was not sufficiently close in time to support a prima facie claim of retaliation).

### E.     Claims brought under the FMLA

"The FMLA contains two relatively distinct types of provisions.  First, it creates a series of prescriptive substantive rights for eligible employees, often referred to as the 'entitlement' or 'interference' provisions which set floors for employer conduct."  *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)).  "Additionally, the FMLA provides protection against discrimination based on the exercise of these rights, often referred to as the 'discrimination' or 'retaliation' provisions."  *Callison*, 430 F.3d at 119 (citing 29 U.S.C. § 2615(a)).  Count III of the Complaint asserts claims under both the substantive and retaliation provisions of the FMLA.  The Court will address each claim in turn.

### 1.     Interference with FMLA rights

To state a claim of interference under the FMLA, a plaintiff must allege that (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which she was entitled under the FMLA.  *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014).[24]  Put more succinctly, state a claim for interference, an "employee only needs to show that [s]he was entitled to benefits under the FMLA and that [s]he was denied them."  *Callison*, 430 F.3d at 119; *see Sommer*, 461 F.3d at 399.

The County moves to dismiss this claim on the grounds that it had previously approved Dreibelbis' requests for FMLA leave, which she took, and it was only after she had exceeded the

---

[24]     "[B]ecause [an] FMLA [interference claim] is not about discrimination," at the burden of proof stage "a *McDonnell Douglas* burden-shifting analysis is not required."  *Id.* (quoting *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

number of days off certified by her doctor that she violated the County's absenteeism policy and was denied further FMLA leave.  *See* County's Mem. at 12.  Dreibelbis contends that the County's argument "ignores that the FMLA explicitly anticipates this type of scenario, where an employee's duration or frequency of absences differs from what is already set forth in a doctor's original medical certification."  Opp'n. Mem. at 8.  Specifically, she points to 29 C.F.R. § 825.308(c)(2), which concerns "significant change[s] in circumstances" between a medical certification and subsequent events requiring leave.  *See id.*

The Court need not engage with the FMLA's regulations at this time.  Dreibelbis has adequately pleaded that she was entitled to FMLA leave, that she requested this leave, and the County denied her request.  This is enough to make out her claim for FMLA interference.  *See Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 577 (E.D. Pa. 2011) ("[T]o prevail on an FMLA interference claim, the employee merely needs to show she was entitled to benefits under the FMLA and that she was denied them.").

## 2.    *Retaliation under the FMLA*

Dreibelbis also claims the termination of her employment "constituted illegal discrimination under the FMLA," Compl. ¶ 36, which the Court construes as an assertion of a claim of unlawful retaliation under the FMLA.  The elements of a prima facie claim of retaliation under the FMLA are (1) invocation of a right to FMLA leave, (2) an adverse employment action, and (3) a casual link between the two.[25]  *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210

---

[25]    Like other discrimination claims examined in this Opinion, at the burden of proof stage, FMLA retaliation "claims based on circumstantial evidence [are] assessed under the burden-shifting framework established in *McDonnell Douglas Corp.*"  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).  As such, the Court applies *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002) and its logic to Dreibelbis' allegations with respect to this claim.

F. Supp. 3d 744, 759 (W.D. Pa. 2016), *aff'd sub nom. Caplan v. L Brands/Victoria's Secret Stores*, 704 F. App'x 152 (3d Cir. 2017).

The Court finds that Dreibelbis has stated a claim for FMLA retaliation.  She has adequately alleged that she invoked her right to FMLA leave and shortly thereafter suffered an adverse employment action in her termination.  As to causation, the conclusion drawn with respect to her ADA retaliation claim holds true here as well:  the temporal proximity of the protected activity to the adverse employment action—eight days—is sufficient to plausibly suggest a causal relationship, or, at a minimum, to support a reasonable expectation that discovery may reveal further evidence to support Dreibelbis' contention that the County's decision to terminate her employment was motivated by her request for a reasonable accommodation.[26]  Moreover, as with its arguments in support of dismissal of Dreibelbis' other discrimination claims, the County's contention that it had a non-retaliatory reason for terminating Dreibelbis, thereby rebutting her prima facia claim, *see* County's Mem. at 14, is premature.  This contention is appropriately made either on a well-developed summary judgment record or at trial.  *See Bartlett v. Kutztown Univ.,* No. 13-4331, 2015 WL 766000, at *8 n.11 (E.D. Pa. Feb. 23, 2015) (noting that "the *McDonnell Douglas* burden-shifting standard does not apply" at the motion to dismiss stage).

---

[26]    In the Court's view, the lone case cited by the County on this point—*Abdul-Latif v. Cty. Of Lancaster*, 990 F. Supp. 2d 517 (E.D. Pa. 2014), in which a court found six days between the protected activity and adverse employment action to be sufficiently suggestive to support an inference of causation —does little to counter this conclusion.

## V.   CONCLUSION

For the reasons discussed above, the County's motion to dismiss is denied.  A separate

Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge